COLBY B. SPRINGER (SBN 214868)
cspringer@polsinelli.com
MELENIE VAN (SBN 335203)
mvan@polsinelli.com
**POLSINELLI LLP**
Three Embarcadero Center, Suite 2400
San Francisco, CA 94111
Telephone:     (415) 248-2100
Facsimile:     (415) 248-2101

MICHAEL P. DULIN (admitted *pro hac vice*)
mdulin@polsinelli.com
**POLSINELLI PC**
1401 Lawrence Street, Suite 2300
Denver, CO 80202
Telephone:     (303) 572-9300
Facsimile:     (303) 572-7883

*Attorneys for Plaintiff Murj, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| MURJ, Inc., a Delaware Corporation,<br><br>                                   Plaintiff,<br>     v.<br><br>RHYTHM MANAGEMENT GROUP, PLLC, a District of Columbia Limited Liability Company,<br><br>                                   Defendant. | Case No. 5:21-cv-00072-EJD<br><br>**SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Murj, Inc., by and through its undersigned counsel, brings this action against Rhythm Management Group, Inc., and alleges as follows:

## THE PARTIES

1.      Murj, Inc. ("Murj") is a Delaware corporation with its principal place of business located at 3912 Portola Drive, Suite 10, Santa Cruz, California 95062.

2.      Rhythm Management Group, PLLC ("Rhythm") is a District of Columbia limited liability company with its principal place of business located at 1050 Connecticut Avenue NW, Suite 500, Washington, DC 20036.

## JURISDICTION

3.      Pursuant to a forum-selection clause contained in the Agreement at issue in this case, the Parties agreed that "[a]ny legal action relating to this Agreement will be brought in Santa Cruz, California, U.S.A., and the parties agree to the exercise of jurisdiction by a state or federal court in such counties." Therefore, jurisdiction is appropriate in this case pursuant to that forum-selection clause.

4.      This Court also has original subject-matter jurisdiction of this action under 28 U.S.C. § 1332, in that it is a civil action between citizens of different states wherein the subject matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

5.      Personal jurisdiction and venue are proper in this District pursuant to 28 U.S.C. §§ 1391(b)-(c) because the acts which form the basis of this action occurred within this District. The underlying contract was executed and to be performed in this District, and the Parties agreed that jurisdiction would reside in this district.

6.      Personal jurisdiction and venue are also proper in this District pursuant to 28 U.S.C. §1391(a) based on the diversity of citizenship.

## INTRADISTRICT ASSIGNMENT

7.      The present action is subject to the Court's Assignment Plan and not otherwise exempt under Local Rule 3-2(c). In accordance with Local Rule 3-2(e), the present action is subject

to assignment to the San Jose Division in light of the forum selection clause referenced above and involving the County of Santa Cruz.

**GENERAL ALLEGATIONS**

8.      Over the last several years, Murj has spent millions of dollars developing a proprietary cardiac device data management software program, including the related documentation, updates and enhancements (the "Murj Platform").

9.      The Murj Platform enables medical care providers to manage workflow of cardiac implantable device data and care protocols. In doing so, the Murj Platform helps clinicians manage data transmissions received from hundreds of different implantable cardiac devices manufactured by numerous different companies. Innovative user interface designs, data calculations, data displays, data management, and workflow innovations allow users to review the clinical data contained within the transmissions.

10.      The Murj Platform enables users to generate workflows and reports that fully document the transmissions received from the foregoing implantable devices. Clinical transmission reports are then routed to medical personnel for final review and approval.

11.      Murj has taken significant steps to protect the Murj Program and its other trade secrets. For example, it executes contracts to ensure that its partners do not appropriate the Murj Platform, or any portion of it, for its own use. The Murj Platform is also protected by various types of registered and issued Intellectual Property rights, demonstrating the novel aspects of the program.

12.      Rhythm is an independent diagnostic testing facility that sells and delivers clinical diagnostic services to medical provider customers ("Clinics"). Rhythm works with its Clinics to monitor, review and sign reports on patient-specific, summarized data.

13.      In the middle of 2018, Rhythm discussed using the Murj Platform to sell and deliver clinical diagnostic services to Rhythm customers (those customers being the medical providers that review and approve the transmission reports, which would be completed by Rhythm using the Murj Platform). After some discussions, Murj agreed to formalize its relationship with Rhythm,

1   whereupon Rhythm obtained from Murj a license to use the Murj Platform and become a Murj

2   customer.

3       14.     On or about August 17, 2018, Murj and Rhythm executed a License Agreement

4   ("License Agreement I"), which included an agreement that Rhythm would abide by the Murj Inc.

5   License Agreement and Terms & Conditions ("Terms & Conditions"). On that same date, the

6   Parties executed a Sales Order ("Sales Order I") for the Murj Remote Device Transmission

7   Management program. *See* License Agreement I, attached as **Exhibit 1**; Terms & Conditions,

8   attached as **Exhibit 2**; and Sales Order I, attached as **Exhibit 3**.

9       15.     On January 15, 2019, Murj and Rhythm executed a License Agreement II ("License

10  Agreement II") wherein Rhythm again agreed to abide by the Terms & Conditions. Rhythm also

11  executed Murj Sales Order II ("Sales Order II") for Murj CIED Management Platform. *See* License

12  Agreement II, attached as **Exhibit 4**; Sales Order II, attached as **Exhibit 5** (The original License

13  Agreement, Terms & Conditions, and License Agreement II together referred to as the

14  "Agreement").

15      16.     The Agreement provides Rhythm with a license to use the Murj Platform in

16  connection with the diagnostic services it provides to its Clinics. Section 3.1 of the Terms &

17  Conditions states that "Murj grants [Rhythm] a Fee-bearing non-exclusive, non-transferable …

18  non-sublicensable license to use the [Murj] Application for [Rhythm's] internal business purposes,

19  which includes the internal business purposes of any subsidiaries that [Rhythm] controls either

20  directly or indirectly."

21      17.     In executing the Agreement, Rhythm agreed not to misappropriate the Murj

22  Platform, or otherwise take unfair advantage of its relationship with Murj.

23      18.     In Section 3.4 of the Terms & Conditions, Rhythm agreed not to "cause or permit

24  the reverse engineering, disassembly, or decompilation of any portion of" the Murj Platform, nor

25  "distribute, sell, sublicense, rent, lease or use the [Murj Platform] (or any portion thereof) for time

26  sharing, hosting, service provider or similar purposes."

27

28

19.     In Section 3.5 of the Terms & Conditions, Rhythm agreed that "Murj and its licensors retain all rights, title and interest, including all intellectual property rights" in the Murj Platform.

20.     Further, Section 6.2 of the License Agreement contains a confidentiality provision providing that the parties must hold each other's Confidential Information "in confidence and not to disclose such information in any form to any third party without the express written consent of the disclosing party, except employees and consultants performing services for the benefit of the receiving party who are under a written non-disclosure agreement." It further states that "Confidential Information shall remain the sole property of the disclosing party and its licensors."

21.     Section 6.1 of the Terms & Conditions defines "Confidential Information" as (emphasis added):

> (a) any information disclosed by either party to the other party, either directly or indirectly, in writing, orally or by inspection of tangible objects, including, without limitation, algorithms, business plans, customer data, customer lists, customer names, designs, documents, drawings, engineering information, financial analysis, forecasts, formulas, hardware configuration information, know-how, ideas, inventions, market information, marketing plans, processes, products, product plans, research, specifications, **Application**, source code, trade secrets, or any other information which is designated as "confidential," "proprietary" or some similar designation and (b) any information otherwise obtained, directly or indirectly, by a receiving party through inspection, review or analysis of the materials described in cause (a) …
>
> * * *
>
> … Confidential Information includes, without limitation, any Products, related documentation, specifications, pricing, disclosures in connection with Services and the terms and conditions of this Agreement. Confidential information shall remain the sole property of the disclosing party or its licensors.

22.     The term "Application" was defined in Section 1.2 of the Agreement as "the software Application developed and delivered by Murj as described on a Sales Order." Hence, the Murj Platform was specifically defined as "Confidential Information" under the Agreement.

23.     Pursuant to the Agreement, Rhythm used the Murj Platform to enable its Clinics to manage workflow of cardiac implantable device data and care protocols.

24.     In mid-2020, during the term of the Agreement, Murj discovered that Rhythm had used the Murj Platform and other Confidential Information to develop its own cardiac monitoring platform called the Rhythm Synergy software platform ("Rhythm Platform") for sharing, hosting, service provider and/or similar purposes.

25.     In mid-2020, Todd Butka, the CEO of Murj, spoke by phone to Rhythm CEO Rhonda Brae and asked if it was true that Rhythm had built the Rhythm Platform. In response, Ms. Brae denied that Rhythm was using the Rhythm Platform.

26.     In mid-2020, Murj assisted Rhythm on the sale of Rhythm services to a Clinic. During the sale process, Murj demonstrated the Murj Platform to Rhythm to incorporate into the sales pitch. Rhythm subsequently won the account. Several months later, Murj discovered that Rhythm supplied the Clinic with its own Rhythm Platform, and not the Murj Platform as discussed among the parties.

27.     The Rhythm Platform is described in detail at https://www.linkedin.com/company/rhythm-management-group-llc/videos/ (last accessed January 5, 2021).

28.     A key feature of the Murj Platform is the daily monitoring and triaging of customizable alerts.

29.     Rhythm claims that its Rhythm Platform provides daily monitoring and triaging of customizable alerts.

30.     The Murj Platform includes its 2 Click Clear service that uniquely provides for the reviewing and processing of multiple transmissions from various sources in just two clicks.

31.     The Rhythm Platform claims to also provide for the reviewing and processing of multiple transmissions from various sources. In doing so, Rhythm claims that the Rhythm Platform allows one to monitor a number of cardiac devices from a single location using a single login, "reviewing and approving multiple reports in just a few clicks."

SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT
Case No. 5:21-CV-00072-EJD

32.     The Murj Platform allows its customers to collect revenue from remote professional fees without the headache of having to setup and manage remote monitoring themselves.

33.     Rhythm claims that its Rhythm Platform also allows its customers to collect revenue from remote professional fees without the headache of having to setup and manage remote monitoring themselves.

34.     The Rhythm Platform incorporates significant other elements from the Murj Platform. For example, the user interface, the wording on its website, the layout, the design, and the phrases contained on the Rhythm Platform are all copies of the Murj Platform.

35.     The "My Agenda" screen of the Rhythm Platform is a clear copy of the Murj Platform's "My Desktop" screen, including the presentation of the alerts, the items that "need attention," and the three red, yellow and green alert signals. *See* comparison below.

Murj "My Desktop" screen:



SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT
Case No. 5:21-CV-00072-EJD

1
2
3
4
5
6
7
8
9



10    Rhythm "My Agenda" screen:

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Rhythm Red, Yellow and Green Alerts

36.    The Rhythm Platform includes the same web page label, the same colors and alert labelling, the same column structure, the same "need attention" categories, the same device labels, the same transmision colors, and even the same "start" button. *See* comparisons above and below.

37.    The similarities of the display, layout, presentation and naming conventions between the Murj Platform and the Rhythm Platform are numerous. For example, the Rhythm Platform displays "work overview" pages with the same graphical user interface and the same naming conventions as the Murj Platform. Murj often refers to the columns as "swim lanes" which can be modified for a user to select their designed workflow processing steps and requirements. The pages have columns with similar naming and functionality, similar color indicators, and an overall similar user interface presentation. *See* comparison below.

Murj Platform "Workflow Overview" screen with patients organized into "backlog," "compose," "needs approval," and "cleared" categories:

Rhythm "Workflow Overview" screen with patients organized in "to be done," "in progress," "needs approval," and "cleared" categories:



38.     When reviewing a patient transmission, the Rhythm Platform "current Transmission" view duplicates many features and innovations found in the Murj Platform "Patient View", including: (i) the ability to document and track the number of transmissions ready for review; (ii) the Murj innovation for organizing and processing multiple transmissions, (iii) the calendar view at the top of the screen; and (iv) the calendar view that performs the same billing insight. *See* comparison below.

Murj Platform "Patient View" screen:



Rhythm Platform patient view screen:



39.    There are numerous other similarities between the Murj Platform and the Rhythm Platform. For example, the Rhythm "Synergy" page includes a copy of a variety of unique features of the Murj website, including copies of the timeline layout, custom color severity, archived transmission indicator, transmission number and colors, workflow layout, transmission count, remote report, needs approval status screen, cancel button, and download button. The two platforms otherwise share similar words, phrases, aesthetics, features and functionality, and other characteristics.

40.    It is clear that Rhythm used the Murj Platform and other Confidential Information that it derived from Murj to create its own program to directly replace use of the Murj Platform and compete against Murj. Hence, it did exactly what it explicitly agreed not to do in the Agreement.

41.    In doing so, Rhythm had access to the Murj Platform, had access to the services provided by Murj, had access to Murj's Confidential Information and, with the knowledge and benefit of these products, services and information, created its competing Rhythm Platform. As a result, it now offers a remote cardiac monitoring application that looks and functions like the Murj Platform, but without being obligated to pay for the Murj Platform.

42.     It was contemplated that Murj would provide its platform to Rhythm to use with its customers. Under that arrangement, both companies would share in the profits generated by the Murj Platform and accompanying services provided to those customers. However, Rhythm instead used Murj's Confidential Information to develop the Rhythm Platform, cut Murj out of these business relationships, and capture all of the profits contemplated from those relationships for itself. In doing so, it appropriated all of the benefits of the Murj Platform without paying the exorbitant costs associated with the research and development of the Murj Platform.

43.     This behavior was in contravention of the very purpose of Sections 1.1, 3.1, 3.4, 3.5, 6.1, and 6.2 of the Agreement, which was to ensure that Rhythm would play fair and not wrongfully appropriate the money, time, and hard work associated with developing the Murj Platform.

44.     On July 1, 2020, Murj sent Rhythm a letter informing it of its breach of the Agreement, and requesting that it cease and desist making, using, marketing, selling, offering for sale, or promoting its Rhythm Platform. Rhythm never responded to this letter.

45.     On August 3, 2020, Murj sent a follow up letter to Rhythm, again requesting that it cease and desist from its wrongful activity. Rhythm provided no response to this letter.

46.     Upon information and belief, Rhythm is continuing to offer its Rhythm Platform as a service to its Clinics, despite having received the foregoing communications.

### FIRST CLAIM FOR RELIEF

**Breach of Written Contract**

47.     Murj repeats the allegations in the preceding paragraphs as though fully set forth herein.

48.     Murj and Rhythm executed License Agreement I and License Agreement II and, in doing so, agreed to the Terms & Conditions.

49.     Murj and Rhythm also executed Sales Order I and Sales Order II relating to the Murj Platform.

50.     The Agreement is a legally binding agreement between the parties.

51.     Pursuant to the terms of the Agreement, Murj provided the Murj Platform, along with a license to the Murj Platform, to Rhythm.

52.     Murj otherwise abided by all of the terms of the Agreement.

53.     The Murj Platform is specifically defined as "Confidential Information" under Section 6.1 of the Terms & Conditions of the Agreement.

54.     Rhythm materially breached the Agreement by, *inter alia*, failing to hold Murj's Confidential Information in confidence and creating the Rhythm Platform in violation of the Agreement, as described herein.

55.     Section 6.2 of the Terms & Conditions of the Agreement states that the "Confidential Information shall remain the sole property of the disclosing party and its licensors," that "[t]he parties agree, both during the term of this Agreement and for a period of five (5) years [] after its termination, to hold each other's Confidential Information in confidence and not to disclose such information in any form to any third party without the express consent of the disclosing party," and that each party "agrees to take all reasonable steps to ensure that Confidential Information is not disclosed or distributed by its employees or agents in violation of this Agreement." Rhythm breached these provisions of the Agreement by using the Murj Platform to create the Rhythm Platform, by incorporating portions of the Murj Platform into the Rhythm Platform, by failing to hold the Murj Platform in confidence, by disclosing portions of the Murj Platform to its customers and other third-parties without permission, and by failing to take reasonable steps to ensure that the Murj Platform and other Confidential Information is not disclosed or distributed by its employees. In doing so, Rhythm violated Murj's exclusive rights to the Confidential Information in violation of Section 6.2 of the Terms & Conditions.

56.     Section 3.4 of the Terms & Conditions of the Agreement states that Rhythm "shall not … knowingly distribute, sell, sublicense, rent, lease or use the [Murj Platform] (or any portion thereof) for time sharing, hosting, service provider, or similar purposes." Rhythm breached this term of the Agreement by using the Murj Platform to create the Rhythm Platform to be used for time sharing, hosting, service provide or similar purposes. In doing so, it copied words, phrases,

SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT
Case No. 5:21-CV-00072-EJD

aesthetics, features, functionality, and other portions of the Murj Platform to create the Rhythm Platform, as described elsewhere in this Complaint. Rhythm then sold, licensed, rented or leased the Rhythm Platform to third parties to be used for time sharing, hosting, service provider and similar services in violation of this provision. Those copies included numerous features and functionalities unique to the Murj Platform, which were confidential to Murj.

57.    Section 3.5 of the Terms & Conditions of the Agreement states that "Murj and its licensors retain all rights, title and interest, including all intellectual property rights" in the Murj Platform. Rhythm breached this provision of the Agreement by using the Murj Platform, including Confidential Information and other intellectual property rights of Murj, to create the Rhythm Platform in violation of Murj's sole right, title and interest in its Murj Platform and Confidential Information.

58.    Section 3.4 of the Terms & Conditions of the Agreement state that Rhythm shall not "cause or permit the reverse engineering, disassembly, or decompilation of" the Murj Platform. Rhythm breached the Agreement by examining in detail the Murj Platform for the purposes of creating a competing platform, therefore effectively reverse engineering the platform. Rhythm undertook the process of analyzing the Murj Platform to identify the system's components and their interrelationships, to understand the basic working principle and structure of the system, and to create representations of the system in another form for the purpose of creating the competing Rhythm Platform. Upon information and belief, Rhythm used the Murj Platform provided under the Agreement to recover the design, requirement specifications and/or functions of the Murj Platform, enabling Rhythm to obtain a head start in creating the competing Rhythm Platform.

**Damages**

59.    As a direct and proximate result of Rhythm's breach of the Agreement, Murj has suffered damages in an amount necessary to put it into a position that it would have been had the breaches not occurred. These damages are direct damages and can be calculated in various ways.

60.    Defendant effectively assumed an unrestricted license to the Confidential Information and, therefore, Murj has suffered damages in an amount equal to the value of the

Confidential Information, which may be measured by the costs associated with developing the Confidential Information that was appropriated by Rhythm.

61.     Murj has also suffered damages equal to the amount of the unjust enrichment of benefits received by Rhythm using the Murj Platform and other Confidential Information, and/or reasonable royalties associated with the use of Murj's Confidential Information, including those derived from the Rhythm Platform, and therefore is entitled to disgorgement of the same.

62.     Murj has suffered damages in an amount equal to the lost profits incurred because of Rhythm's use of the Confidential Information, the reverse engineering of its Murj Platform, and other breaches of the Agreement. Such lost profits include those relating to customers that would have used the Murj Platform but for the Rhythm Platform and Rhythm's breaches. The lost profits associated with these customers is a direct loss incurred by Murj as a result of Rhythm's breach, and they are precisely what Murj bargained for and, therefore, are recoverable to help put Murj in the same position it would have occupied had the contract been performed by Rhythm.

63.     Murj has also suffered damages because the annual lost revenue associated with the customers appropriated by Rhythm using the Rhythm Platform has resulted in a depressed market value of Murj as a company. Therefore, Rhythm would be alternatively liable for the market value of Murj before the breach versus the value of Murj after the breach. Such damages would restore Murj to the position it would be in had Murj not breached the Agreement.

64.     The Agreement, including its provisions relating to Confidential Information, is of the nature that Rhythm should have contemplated the fact that the foregoing losses would have been the probable result of breaching the Agreement as described herein.

65.     Rhythm's breach of the Agreement was a substantial factor in causing Murj's damages.

### Request for Specific Performance

66.     Murj and Rhythm entered a specifically enforceable contract that is sufficiently certain in its terms; namely, Murj and Rhythm entered into the Agreement which provided Rhythm with a license to the Murj Platform and in return Rhythm agreed that the Murj Platform constitutes

"Confidential Information" and shall remain the sole property of Murj, that it will hold that program in confidence, that it will not cause or permit reverse engineering, disassembly or decompilation of the Murj Platform, that it will not distribute, sell, sublicense, rent, lease or use any portion of the Murj Platform, and that it will not use the Murj Platform for service provider or other purposes.

67.    Murj and Rhythm both provided adequate consideration under the Agreement.

68.    Murj has performed all of its obligations and covenants under the Agreement.

69.    Rhythm has breached the Agreement.

70.    Murj has no adequate remedy at law.

71.    Murj prays the Court for an order and adjudge that Rhythm must specifically perform all of its obligations under the Agreement including those set forth in Sections 3.1, 3.4, 6.1 and 6.2 of the Agreement.

**Request for Permanent Injunction**

72.    Murj is informed and believes and thereon alleges that an actual controversy exists between Murj and Rhythm relative to the Agreement.

73.    Murj prays that the Court adjudicate the rights, interests, duties, and obligations of Murj and Rhythm under the Agreement, and Murj specifically prays that the Court determine that Rhythm breached the Agreement and continues to breach those provisions of the Agreement that survived its termination.

74.    In conjunction therewith, Murj requests that this Court issue permanent injunctive relief, which prohibits Rhythm from continuing to breach the Agreement by making, marketing, selling, offering for sale, or using the Rhythm Platform.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Murj, Inc. requests that this Court enter judgment in its favor and against Rhythm Management Group, Inc. on all claims as follows:

A.    For damages in an amount to be determined at trial;

SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT
Case No. 5:21-CV-00072-EJD

1      B.     For the issuance of an injunction preventing the defendant from using its Murj

2  Platform or otherwise further breaching the terms of the Agreement;

3      C.     For an order awarding Plaintiff its attorney fees and costs pursuant to Section 12.5

4  of the Terms & Conditions portion of the Agreement;

5      D.     For an order compelling the Defendant to specifically perform under the

6  Agreement;

7      E.     For a declaration of Plaintiff and Defendant's respective rights, duties, interests,

8  and obligations; and

9      F.     For any other relief this Court deems just and proper.

10                      **JURY DEMAND**

11     Murj demands a trial by jury on all claims and issues so triable.

12  Dated:    December 8, 2021           POLSINELLI LLP

13

14

15                        By:   */s/ Colby B. Springer*

16                           COLBY B. SPRINGER

17                           POLSINELLI LLP

18                           Three Embarcadero Center, Suite 2400
                              San Francisco, CA 94111

19                           Tel:    (415) 248-2100
                              Fax:   (415) 248-2101

20                           Email:  cspringer@polsinelli.com

21

22

23

24

25

26

27

28

SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT
Case No. 5:21-CV-00072-EJD