MAYER BROWN LLP
Edward D. Johnson (SBN 189475)
Elspeth V. Hansen (SBN 292193)
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
wjohnson@mayerbrown.com
ehansen@mayerbrown.com
Telephone: (650) 331-2000
Facsimile:  (650) 331-2060

Michael L. Lindinger (*pro hac vice*)
Marie C. Notter (*pro hac vice*)
1999 K Street, N.W.
Washington, D.C. 20006-1101
mlindinger@mayerbrown.com
mnotter@mayerbrown.com
Telephone:  (202) 263-3000
Facsimile:  (202) 263-5323

*Attorneys for Defendant Rhythm Management Group,*
*PLLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| MURJ, Inc., a Delaware Corporation,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>RHYTHM MANAGEMENT GROUP, PLLC, a District of Columbia Limited Liability Company,<br><br>　　　　　Defendant. | Case No. 5:21-cv-00072-EJD<br><br>**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Date:　　　June 23, 2022<br>Time:　　　9:00 a.m.<br>Courtroom:　4, Fifth Floor<br><br>**ORAL ARGUMENT REQUESTED** |

1

2

## TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ........................................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED ........................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

INTRODUCTION ........................................................................................................................ 1

STATEMENT OF FACTS ........................................................................................................... 2

MURJ'S COMPLAINT DOES NOT CONTAIN SUFFICIENT FACTS TO MAKE ITS
CLAIMS PLAUSIBLE OR TO STATE A CLAIM FOR RELIEF ............................................ 4

    A.    There Is No Contract Breach Because The "Confidential" Information
        Pleaded By Murj Was Already Public and Murj's Claim of Reverse
        Engineering Lacks Any Factual Support. ............................................................... 5

        1.    Murj's Confidentiality Clause Allegation Is Insufficient Because It
            Relies on Information That Was Already Publicly Available When
            Rhythm Signed the Agreement in August 2018. ..................................... 6

        2.    Murj's Reverse Engineering Allegations Are Not Plausible. ................. 11

        3.    Murj's New Theories Rooted in Sections 3.4 and 3.5 of the
            Agreement Fail Because Murj Misreads the Contract and
            Inadequately Pleads Its Intellectual Property Rights. .............................. 13

    B.    The Damages Murj Claims Are Not Available Under California Law or
        the Terms of the Agreement. ............................................................................... 14

    C.    Because Murj Has Inadequately Alleged Breach of the Agreement, Murj's
        Specific Performance and Injunctive Allegations Should Be Dismissed. ........... 16

CONCLUSION ........................................................................................................................... 17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................4, 5, 14

*Behnke v. State Farm Gen. Ins. Co.*,
   127 Cal. Rptr. 3d 372 (Cal. Ct. App. 2011) ...........................................................16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................... *passim*

*CDF Firefighters v. Maldonado*,
   70 Cal. Rptr. 3d 667 (Cal. Ct. App. 2008) .................................................................4

*Challenge Printing Co., Inc. v. Elecs. for Imaging Inc.*,
   500 F. Supp. 3d 952 (N.D. Cal. 2020) ......................................................................4

*DocMagic, Inc. v. Ellie Mae, Inc.*,
   745 F. Supp. 2d 1119 (N.D. Cal. 2010) ...................................................................12

*DVD Copy Control Ass'n v. Bunner*,
   10 Cal. Rptr. 3d 185 (Cal. Ct. App. 2004) ......................................................... 11-12

*Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*,
   122 F.3d 1211 (9th Cir. 1997) .............................................................................6, 11

*In re Facebook, Inc. Secs. Litig.*,
   405 F. Supp. 3d 809 (N.D. Cal. Sept. 25, 2019) .......................................................7

*Fallbrook Hosp. Corp. v. Cal. Nurses Ass'n*,
   2014 WL 2779763 (S.D. Cal. June 19, 2014) .........................................................17

*Fleming v. Nw. Trustee Servs., Inc.*,
   2015 WL 3688424 (E.D. Wash. June 12, 2015) .....................................................16

*Harrell v. Elizabeth F. Ferguson Revocable Living Tr.*,
   2019 WL 6618056 (E.D. Cal. Dec. 5, 2019) ..........................................................17

*Hollins v. Recontrust, N.A.*,
   2011 WL 1743291 (C.D. Cal. May 6, 2011) ...........................................................17

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir. 2008) ...................................................................................4

*Marmarchi v. Univ. of Ill.*,
   2017 U.S. Dist. LEXIS 186396 (C.D. Ill. Mar. 13, 2017) ......................................14

ii

1

2

3

*McBride v. Boughton*,
    20 Cal. Rptr. 3d 115 (Cal. Ct. App. 2004) ...................................................................14

*Mohebbi v. Khazen*,
    50 F. Supp. 3d 1234 (N.D. Cal. 2014) ........................................................................14

*Morris v. Residential Credit Sols., Inc.*,
    2015 WL 428114 (E.D. Cal. Feb. 2, 2015) ...................................................................17

*Peregrine Pharms., Inc. v. Clinical Supplies Mgmt., Inc.*,
    2014 WL 3791567 (C.D. Cal. July 31, 2014) ...............................................................15

*Philippine Airlines, Inc. v. McDonnell Douglas Corp.*,
    234 Cal. Rptr. 423 (Cal. Ct. App. 1987) ......................................................................15

*Red.com, Inc. v. Jinni Tech Ltd.*,
    2017 WL4877414 (C.D. Cal. Oct. 11, 2017) ...............................................................12

*Schellinger Bros. v. Cotter*,
    2 Cal.App.5th 984 (Cal. Ct. App. 2016) ......................................................................15

*Schonfeld v. Hilliard*,
    218 F.3d 164 (2d Cir. 2000) .........................................................................................15

*SriCom, Inc. v. eBisLogic*,
    2012 WL 4051222 (N.D. Cal. July 24, 2012) ................................................................4

*Subotincic v. 1274274 Ontario Inc.*,
    2013 WL 3964994 (C.D. Cal. Apr. 9, 2013) .............................................................6, 11

**Statutes**

Cal. Com. Code § 2719(3) .................................................................................................15

**Other Authorities**

Fed. R. Civ. P. 9(g) ...........................................................................................................15

Fed. R. Civ. P. 12(b)(6) ................................................................................................1, 17

24

25

26

27

28

### NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT, on June 23, 2022, at 9:00 a.m., or as soon thereafter as this matter may be heard before the Hon. Edward J. Davila in Courtroom 4, located at the U.S. District Court for the Northern District of California, San Jose Division, at 280 South 1st Street, San Jose, CA 95113, Defendant Rhythm Management Group, PLLC ("Rhythm") will and hereby does move this Court to dismiss with prejudice Plaintiff Murj, Inc.'s ("Murj") Second Amended Complaint (Dkt. 44) for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

Rhythm's motion seeks the dismissal of Plaintiff's Complaint in its entirety.

### STATEMENT OF ISSUES TO BE DECIDED

1.  Whether Murj has stated a claim for breach of a confidentiality clause of a contract under California law when the allegedly confidential information was already publicly available.

2.  Whether Murj's allegations, nearly identical to those in its Amended Complaint that this Court previously found inadequate, and conclusory pleading of an industry definition are sufficient to state a claim for breach of contract by reverse engineering under California law.

3.  Whether Murj can seek damages for a claim that runs contrary to the terms of the contract and California law.

4.  Whether Murj can seek specific performance and injunctive relief when it cannot demonstrate Rhythm breached any clause of the contract.

### <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### INTRODUCTION

Despite having another chance to plead its claims with sufficient specificity, Murj's Second Amended Complaint suffers from the very same defects as the complaint that the Court previously dismissed.  *See* Dkt. 43:

- ***Publicly available information cannot breach the confidentiality clause***: Murj's entire argument hinges on its admission that its platform is the only confidential information at issue.  *See* Dkt. 44, ¶53; *see also* Dkt. 43, 6:4-6.  Murj's concession, however, is fatal as it had publicly disseminated images of the supposedly

confidential platform on its website and social media (not to mention in-person) before signing the contract at issue with Rhythm. And, as the contract clearly states, information that is already publicly available at the time the contract was signed is not confidential. *See* Dkt. 44-2, Section 6.2.

- ***Murj's claim of reverse engineering lacks any specific facts to support it:*** Murj adds no further detail as to how Rhythm allegedly reverse engineered the Murj technology. Rather, Murj includes a bare-bones recitation of the common elements of a reverse engineering claim, relying on a paraphrase of an industry definition. But such a sleight of hand does not remedy the deficiencies that the Court previously found as to these claims.

- ***Murj has no basis to claim damages***: Murj claims special and consequential damages that are either precluded under the plain language of its contract with Rhythm or are not ordinarily permitted under California law without some special showing. As to the latter route, Murj has not even attempted to make such a heightened showing, nor has Murj pleaded anything other than conclusory statements regarding damages causation.

Accordingly, Murj's Second Amended Complaint fails to state a cause of action and should be dismissed.

## STATEMENT OF FACTS

Rhythm Management Group helps medical providers monitor patients who have implanted cardiac devices. Rhythm uses software to collect data from patients' cardiac devices. Rhythm can then assist medical providers by escalating device issues and tracking those issues to ensure they are resolved. Murj has developed its own software (the "Murj Platform") to receive and manage data from implanted cardiac devices. *See generally* Dkt. 44.

In mid-2018, Rhythm and Murj began discussing the Murj Platform. Dkt. 44, ¶13. In August 2018, they entered License Agreement and Sales Order I, supplemented a year later by License Agreement and Sales Order II (collectively "the Agreement"). *See* Dkt. 44, ¶¶13-15; 44-1; 44-2; 44-3; 44-4; 44-5. The Agreement allowed Rhythm to use the Murj Platform. Dkt. 44,

¶16.

The Terms & Conditions ("Terms") to the Agreement included several provisions governing confidential information. *See* Dkt. 44-2. Section 3.4 of the Terms prohibited "reverse engineering, disassembly, or decompilation of any portion" of Murj's Platform. *See* Dkt. 44, ¶18; *see also* Dkt. 44-2, Section 3.4. Section 6.1 defined "Confidential Information" to include, among other things, the actual software "Application" (i.e., the Murj Platform). Dkt. 44, ¶¶21, 22; *see also* Dkt. 44-2, Section 6.1. And Section 6.2 required a licensee—in this case, Rhythm— to hold "in confidence and not to disclose such information in any form to any third party without the express written consent of the disclosing party." *See* Dkt. 44, ¶20; *see also* Dkt. 44-2, Section 6.2.

Murj alleges that Rhythm created its own software (the "Rhythm Platform") based on the Murj Platform in violation of the Agreement based on purported similarities between the platforms. *See generally* Dkt. 44. For example, Murj alleges that the two platforms serve the same function: they allow remote monitoring and triaging of cardiac device alerts. *Id.*, ¶¶28-29, 41. Murj also claims the systems have similar design and layout. *See id.*, ¶¶30-39. In general, Murj alleges that the two systems use tabular formats and track tasks and medical indicators using widely accepted conventions, including, for example, the red-yellow-green of a stoplight to flag urgent, concerning, and normal conditions (*id.*, ¶35); a Kanban board-style view to track tasks from beginning to completion (*id.*, ¶37); and "cancel" and "download" buttons (*id.*, ¶39).

Murj claims, based solely on these similarities, that Rhythm breached the confidentiality provisions of the Agreement by creating a similar program. Specifically, Murj alleges that Rhythm did not hold Murj's information in confidence, misappropriated Murj's confidential information, reverse engineered the Murj Platform, used the Murj Platform to create its own platform, and infringed Murj's exclusive rights to its platform. *See* Dkt. 44, ¶¶54-58. Murj asks for damages, specific performance, and an injunction against Rhythm's continuing use of the Rhythm Platform. *See id.*, ¶¶59-74, Prayer for Relief.

Rhythm moved to dismiss Murj's Amended Complaint because Murj had inadequately pleaded what information was confidential, how Rhythm reverse engineered the Murj platform,

1  and what damages Murj had suffered from Rhythm's alleged breach.  The Court agreed that

2  Murj's reverse engineering and damages allegations were insufficient and granted Rhythm's

3  motion to dismiss.  Dkt. 43, 7:23-8:20.  Regarding confidentiality, the Court found that it had no

4  evidence from which to conclude that the Murj Platform had been publicly disclosed before Murj

5  and Rhythm signed the Agreement.  Dkt. 43, 6:16-23.  The Court gave leave for Murj to file its

6  Second Amended Complaint Dkt. 43 at 9, but that complaint is still insufficient for the reasons

7  stated below and should similarly be dismissed—this time with prejudice.

8  **MURJ'S COMPLAINT DOES NOT CONTAIN SUFFICIENT FACTS TO MAKE ITS**

9  **CLAIMS PLAUSIBLE OR TO STATE A CLAIM FOR RELIEF**

10  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

11  accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

12  U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A

13  complaint cannot survive a motion to dismiss for failure to state a claim if it merely pleads "labels

14  and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550

15  U.S. at 555.  For a claim to be plausible, a complaint must do more than "plead[] facts that are

16  'merely consistent with' a defendant's liability."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550

17  U.S. at 557).  Rather, a complaint must allege "factual content that allows the court to draw the

18  reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "In considering

19  whether the complaint is sufficient to state a claim, the court must accept as true all of the factual

20  allegations contained in the complaint,"  *SriCom, Inc. v. eBisLogic*, 2012 WL 4051222, at *2

21  (N.D. Cal. July 24, 2012) (citing *Iqbal*, 556 U.S. at 678), and "construe the pleadings in the light

22  most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d

23  1025, 1031 (9th Cir. 2008).

24  A breach of contract claim under California law requires showing four elements: "(1)

25  existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3)

26  defendant's breach; and (4) damages to plaintiff as a result of the breach."  *CDF Firefighters v.*

27  *Maldonado*, 70 Cal. Rptr. 3d 667, 679 (Cal. Ct. App. 2008).

28  In its Second Amended Complaint, as with its Amended Complaint, Murj alleges that its

4

former licensee, Rhythm, breached the Agreement that governed Rhythm's right to use Murj's software platform. *See generally* Dkt. 44, 44-1 to 44-5. Murj alleges that the entire Murj Platform was confidential. Dkt. 44, ¶53; *see also* Dkt. 43, 6:4-6. Murj's allegations consist of a comparison between its system and Rhythm's. Unsurprisingly, the two systems, which both allow for monitoring patients remotely, share some similarities. Based on these similarities, Murj alleges that Rhythm misused Murj's confidential information and reverse-engineered Murj's platform to create a competing product.

However, Murj's Second Amended Complaint fails for a multitude of reasons. The only confidential information Murj alleges is the Murj Platform. Dkt. 44, ¶53. But Murj had already publicly disseminated images of the Murj Platform, including identical "features" as highlighted in the Second Amended Complaint, and descriptions of the Murj Platform's functionalities, before entering into the Agreement with Rhythm. Once information is disclosed publicly, it is no longer confidential, under the Agreement or under California law. Murj's reverse engineering claim is likewise inadequate because Murj only alleges conclusory labels instead of facts. On damages, Murj claims damages that are impermissible under California law and the Agreement.

Accordingly, Murj's Second Amended Complaint should be dismissed in its entirety with prejudice for failure to state a claim.

A.    **There Is No Contract Breach Because The "Confidential" Information Pleaded By Murj Was Already Public and Murj's Claim of Reverse Engineering Lacks Any Factual Support.**

Murj claims as confidential information that was already publicly available before Rhythm signed the Agreement. Information that has already been disclosed to the public is no longer confidential under California law. Indeed, the Agreement expressly incorporated the requirement that confidential information be actually confidential. *See* Dkt. 44-2, Section 6.2. Thus, under the terms of its own Agreement, Murj's claim fails. Moreover, Murj's claims as to reverse engineering are far too conclusory to meet the *Iqbal/Twombly* pleading requirements. Thus, Murj has failed to adequately allege any breach of the Agreement.

### 1. Murj's Confidentiality Clause Allegation Is Insufficient Because It Relies on Information That Was Already Publicly Available When Rhythm Signed the Agreement in August 2018.

Information is confidential only as long as it is not already publicly known. *See Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1227 (9th Cir. 1997) (holding that information that a contract defined as confidential was not, in fact, confidential because product previously was sold to others without non-disclosure agreements); *Subotincic v. 1274274 Ontario Inc.*, 2013 WL 3964994, at *21 (C.D. Cal. Apr. 9, 2013) (holding no genuine dispute of material fact as to breach of a confidentiality agreement because "[t]he confidential information was . . . within the public domain well before Defendants may have used it").

The Agreement reflects this common-sense rule. The Agreement states that information is not confidential "if the receiving party can establish by documentary evidence that the information is or was . . . lawfully available to the public through no act or omission of the receiving party." Dkt. 44-2, Section 6.2. Murj relies on the Murj Platform as its confidential information (Dkt. 44, ¶53), but images of the Murj Platform, and the similarities that Murj relies on, were already publicly available before Rhythm signed the Agreement in August 2018. Murj's claim of breach of the confidentiality agreement fails, and its claims should be dismissed.

Murj relies on the similarities between Rhythm's "My Agenda" screen and Murj's "My Desktop" screen (which is displayed as "My Desk"), "including the presentation of the alerts, the items that 'need attention,' and the three red, yellow, and green alert signals."

 

Dkt. 44, ¶35 (Second Amended Complaint showing images of the Murj Platform).

But Murj had released photos of its "My Desktop" screen (also shown as "My Desk"), the alerts, the items that "need attention," and its stoplight signals well before August 2018. As stated in Defendant's Request for Judicial Notice, filed concurrently with this motion, this Court should take judicial notice of these publicly-available images and articles to establish what information was publicly known at the time the parties signed the Agreement in August 2018.[1]

For example, Murj posted the below screenshot, showing its red, yellow, and green alert system on its website by June 24, 2017, including in the context of the same "On Tap for Today" screen shown in the Second Amended Complaint above:



*See* Lindinger Declaration, Ex. 1 (Affidavit of Duncan Hall ("Hall Affidavit"), Ex. A at 2); *see also* Lindinger Dec., Ex. 2 (Murj Twitter post, dated January 18, 2018, showing same).

Murj also disseminated the stoplight system and transmissions for the past day(s) feature (i.e., the area to the right of the interface with the black/blue graphic and drop-down menu) in the

_____

[1] Although courts cannot generally look outside of a complaint in deciding a motion to dismiss, courts may still consider documents properly subject to judicial notice. *In re Facebook, Inc. Secs. Litig.*, 405 F. Supp. 3d 809, 827 (N.D. Cal. Sept. 25, 2019).

context of its "My Desktop" (or "My Desk") on its website by July 7, 2017—these are the same red, yellow, and green alert graphics shown in the top right corner of the picture above in Murj's Second Amended Complaint, ¶35:



*See* Lindinger Dec., Ex. 1 (Hall Affidavit), Ex. A at 9; *see id.* at 15 (Murj website, dated October 20, 2017, showing same) and 19 (Murj website, dated July 1, 2018, showing same); Lindinger Dec., Ex. 3 (Murj Twitter post, dated May 23, 2018, showing stoplight system for "My Desk").

And images of Murj's updated desktop relabeling the workflow from "Dockets Needing Your Approval" to "Need Your Attention" (which also featured the red, yellow, and green stoplight images in the top right corner of the Murj Platform) were publicly known by May 2018—three months before Rhythm signed the Agreement in August 2018:

*See* Lindinger Dec., Ex. 4 (Debbe McCall Twitter post, dated May 18, 2018).

Moreover, Murj claims that transmission and patient history information, and calendaring

1   functions were part of the purportedly confidential Murj Platform.  *See* Dkt. 44, ¶38.  However,

2   Murj publicly disclosed its Patient View or the same or closely related features in 2017, months

3   before Rhythm signed the Agreement in August 2018.[2]   For example, Murj disclosed the

4   following image on its website on July 7, 2017, which comprises a host of historical patient

5   information, including device and transmission information, and calendaring functionality:



20   Lindinger Dec., Ex. 1 (Hall Affidavit), Ex. A at 9 (Murj website, dated July 7, 2017); *see id.* at 14

21   (Murj website, dated October 20, 2017, showing same) and 19 (Murj website, dated July 1, 2018,

22   showing same); Lindinger Dec., Ex. 5 (Murj Twitter post, dated May 2, 2017, showing same

23   image); *see also* Lindinger Dec., Ex. 4 (Debbe McCall Twitter post, dated May 8, 2018) (showing

24   another example of patient detail information).

25           Finally, the functionality of the Murj Platform was likewise well-known.  At least as early

---

[2] Apart from Murj's public disclosure of its Patient View interface and related features, Rhythm Platform's patient view screen looks nothing like Murj's "Patient View" screen. *See* Dkt. 44, ¶38.

1    as 2017, the Murj website touted Murj's "2-Click Clear" technology (*see* Dkt. 44, ¶¶30-31), as

2    well as historical transmission, workflow, and billing information functions:







22   Lindinger Dec., Ex. 1 (Hall Affidavit), at 3-4.   And in 2018, Murj appeared at trade shows to

23   demonstrate the Murj Platform.   *See, e.g.*, Lindinger Dec., Ex. 4 (Debbe McCall Twitter post,

24   dated May 8, 2018); Lindinger Dec., Ex. 6 (Gunnar Anderson Twitter post, dated March 10,

25   2018); Lindinger Dec., Ex. 7 (Murj Twitter post, dated May 9, 2018); Lindinger Dec., Ex. 8 (Jim

26   Collins Twitter post, dated May 11, 2018).   The Murj Platform functionality and layout were

27   therefore not only publicly available—Murj actively disclosed the Murj Platform to large groups

28   of people at industry events before Rhythm signed the Agreement in August 2018.   Murj cannot

1    now claim that its platform was confidential.   *See* Dkt. 44, ¶53 (citing Section 6.1 of the

2    Agreement); *see also* Dkt. 44-2, Section 6.2 (describing public information is not Confidential

3    Information).

4         Thus, Murj cannot adequately plead any breach of the confidentiality clause, Section 6.2,

5    of the Agreement, because the wide, public dissemination of the interface, features, and

6    functionality of the Murj Platform renders such confidentiality clause ineffective.  *See* Dkt. 43 at

7    6 (citing *Ent'mt Research*, 122 F.3d at 1226-27); *see also Subotincic*, 2013 WL 3964994, at *21

8    (C.D. Cal. Apr. 9, 2013) (granting summary judgment for defendant on breach of a confidentiality

9    agreement because "[t]he confidential information was . . . within the public domain well before

10   Defendants may have used it").

11              **2.  Murj's Reverse Engineering Allegations Are Not Plausible.**

12        Murj's claim of reverse engineering also remains inadequate.  Murj alleges that Rhythm

13   agreed not to "cause or permit the reverse engineering, disassembly, or decompilation of any

14   portion of" the Murj Platform.  *See* Dkt. 44, ¶¶18, 58 (citing to Section 3.4 of the Terms and

15   Conditions, Dkt. 44-2).  In attempting to salvage its claim, Murj freshly alleges that Rhythm

16   "examin[ed] in detail the Murj Platform for the purposes of creating a competing platform,

17   therefore effectively reverse engineering the platform.  Rhythm undertook the process of

18   analyzing the Murj Platform to identify the system's components and their interrelationships, to

19   understand the basic working principle and structure of the system, and to create representations

20   of the system in another form for the purpose of creating the competing Rhythm Platform."  Dkt.

21   44, ¶58.  Murj further asserts that "Rhythm used the Murj Platform provided under the

22   Agreement to recover the design, requirement specifications and/or functions of the Murj

23   Platform, enabling Rhythm to obtain a head start in creating the competing Rhythm Platform."

24   *Id.*  This effort was in response to the Court's finding "that Murj failed to adequately plead

25   Rhythm's breach of the Agreement's reverse engineering clause."  Dkt. 43, 7:23-24.

26        However, Murj's amended reverse engineering claim still fails because it is nothing more

27   than "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.

28   "Reverse engineering is the process by which one starts with a known product and works

11

1    backward to determine how it was developed or manufactured." *DVD Copy Control Ass'n v.*
2    *Bunner*, 10 Cal. Rptr. 3d 185, 188 n.4 (Cal. Ct. App. 2004).

3         In its opposition to Rhythm's initial motion to dismiss, as to the reverse engineering
4    argument, Murj relied on the "paragraphs describing the similarities in the two programs, which
5    demonstrate that the Rhythm Platform is a copy of the Murj Platform, created through reverse
6    engineering." Dkt. 29 at 7 (citing Dkt. 5, 6:15-11:15, or paragraphs 27-39). Murj repeats those
7    same paragraphs verbatim in its Second Amended Complaint, with only the final sentence in
8    paragraph 39 providing additional general comparisons between the two platforms. *Compare id.*
9    *with* Dkt. 44, 6:15-11:17, or paragraphs 27-39).

10        The Court previously relied on ***Murj's*** authority to properly conclude that "[m]ore is
11   required for a reasonable inference that Rhythm reverse engineered the Murj Platform to create
12   the Rhythm Platform." *See* Dkt. 43 at 7 (*citing DocMagic, Inc. v. Ellie Mae, Inc*., 745 F. Supp.
13   2d 1119, 1132, 1151–52 (N.D. Cal. 2010) and *Red.com, Inc. v. Jinni Tech Ltd.*, 2017
14   WL4877414, at *7 (C.D. Cal. Oct. 11, 2017), both of which Murj cited in its opposition, Dkt. 29
15   at 13). The Court can do the same here as nothing has changed.

16        Murj's only "new" allegations, those in paragraph 58 (Dkt. 44, 14:14-21), are "merely
17   consistent with liability" and cannot "nudge[] [its] claims across the line from conceivable to
18   plausible." *See* Dkt. 43, 7:20-22 (citing *Bell Atl. Corp.*, 550 U.S. at 547). Rather than provide a
19   "more detailed explanation of Rhythm's reverse engineering" as noted by the Court, Murj seems
20   to have largely parroted a definition of reverse engineering from a decades-old technical
21   publication. *See* Lindinger Dec., Ex. 9 (IEEE publication) at 15 ("Reverse engineering is the
22   process of analyzing a subject system to identify the system's components and their
23   interrelationships and create representations of the system in another form or at a higher level of
24   abstraction."). That definition is substantially similar to Murj's allegation that "Rhythm
25   undertook the process of analyzing the Murj Platform to identify the system's components and
26   their interrelationships, to understand the basic working principle and structure of the system, and
27   to create representations of the system in another form for the purpose of creating the competing
28   Rhythm Platform." Dkt. 44, ¶58. Murj's attempt to pass off an industry definition in a last-ditch

1    effort to save its allegations should be equally rejected as insufficient.

2        Murj's final allegation that "Rhythm used the Murj Platform provided under the

3    Agreement to recover the design, requirement specifications and/or functions of the Murj

4    Platform, enabling Rhythm to obtain a head start in creating the competing Rhythm Platform,"

5    *id.*, likewise is a mere conclusory assertion.  It says nothing of how Rhythm conducted any

6    reverse engineering.

7        As a result, Court should dismiss Murj's reverse engineering claim for a second time.

8        **3.  Murj's New Theories Rooted in Sections 3.4 and 3.5 of the Agreement Fail**

9            **Because Murj Misreads the Contract and Inadequately Pleads Its Intellectual**

10            **Property Rights.**

11        Murj claims two additional theories of breach in its Second Amended Complaint, but each

12    fails to meet the pleading standard necessary to maintain these claims.

13        The first is that Rhythm breached Section 3.4 of the Terms and Conditions by copying the

14    Murj Platform for the Rhythm Platform and using the Rhythm Platform for "time sharing,

15    hosting, service provide[r] or similar purposes."  Dkt. 44, ¶56.  Murj, however, takes Section 3.4

16    out of context to make this assertion.  Section 3.4 states that Rhythm will not "distribute, sell,

17    sublicense, rent, lease or use the Products (or any portion thereof) for timesharing, hosting,

18    service provider or similar purposes."  Dkt. 44-2 at 4.  "Products" is defined as "the Murj

19    Application and Services provided by Murj hereunder."  *See id.* at 3.  In other words, this portion

20    of Section 3.4 prohibits Rhythm from, for example, selling pirated copies of the Murj Platform if

21    such software was available on a writeable disc (which it is not—it is on the cloud, Dkt. 44-2 at

22    15).  Murj has not pleaded any facts related to Rhythm engaging in such acts, nor do "Products"

23    cover the Rhythm Platform, as Murj believes based on a misreading of Section 3.4.  Rather,

24    Section 3.4 does not prohibit Rhythm's use of a new product of its own creation.  Murj's further

25    reliance on the purported confidentiality of the Murj Platform to buttress its Section 3.4 claim is

26    equally unavailing for the reasons stated in Section A(1) herein.  *See* Dkt. 44, ¶56.

27        The second theory is that Rhythm breached Section 3.5 of the Terms and Conditions,

28    related to all intellectual property rights of Murj, "by using the Murj Platform, including

13

1   confidential information and other intellectual property rights of Murj, to create the Rhythm

2   Platform." Dkt. 44, ¶57.  Murj has not identified any intellectual property other than the Murj

3   Platform, which is not confidential, for the reasons described above.  Such a bare bones assertion

4   of "intellectual property rights" without identifying what right is, in fact, allegedly violated does

5   not pass muster under the *Iqbal*/*Twombly* pleading requirements.  *See Marmarchi v. Univ. of Ill.*,

6   2017 U.S. Dist. LEXIS 186396, at *9-10 (C.D. Ill. Mar. 13, 2017) (dismissing, pursuant to Rule

7   12(b)(6), vaguely pleaded claims referencing "intellectual property rights" where it was

8   "impossible to ascertain the intellectual property at issue" and "give Defendants fair notice of the

9   claims and the grounds upon which they rest").

10      **B.      The Damages Murj Claims Are Not Available Under California Law or the**

11              **Terms of the Agreement.**

12          In response to the Court concluding that Murj failed to adequately plead damages, Murj's

13   Second Amended Complaint added nearly a page of language.  *See* Dkt. 44, 14:24-15:21.  The

14   problem, however, was not the volume but the content.  Murj's allegations of damages and

15   causation continue to fail under the *Iqbal*/*Twombly* pleading standard because the damages Murj

16   claims are unavailable under California law and the Agreement.  Murj claims unjust enrichment

17   or a reasonable royalty; Dkt. 44, ¶61; "the costs associated with developing the Confidential

18   Information that was appropriated by Rhythm;" Dkt. 44, ¶60; lost profits; Dkt. 44, ¶62; and "the

19   market value of Murj before the breach versus the value of Murj after the breach."  Dkt. 44, ¶63.

20   None of these damages are available.

21          Unjust enrichment is not available when the parties have a valid contract.  *See Mohebbi v.*

22   *Khazen*, 50 F. Supp. 3d 1234, 1260 (N.D. Cal. 2014).  Unjust enrichment is an alternative to

23   "breach of contract damages when the parties had an express contract, but it was procured by

24   fraud [or] is unenforceable or ineffective for some reason."  *McBride v. Boughton*, 20 Cal. Rptr.

25   3d 115, 121 (Cal. Ct. App. 2004).  Rhythm has never argued that the Agreement with Murj was

26   invalid.  "If the parties have a valid and enforceable contract, a Plaintiff is generally not permitted

27   to proceed on a quasi-contractual claim."  *Mohebbi*, 50 F. Supp. 3d at 1260.  Thus, Murj's claim

28   for unjust enrichment should be dismissed.  *See* Dkt. 44, ¶61.

1  Murj's claims for its costs in developing the confidential information and the drop in its
2  market value after the breach are consequential damages not permitted under the Agreement.  The
3  Agreement precludes recovery of "any indirect, incidental, special or consequential damages,
4  including without limitation procurement of substitute products or services or loss of profits,
5  revenue, data or data use."  Dkt. 44-2, Section 9.1.  And the paragraph applies equally to "either
6  party or its licensors."  *Id.*  California specifically allows such limitations on consequential
7  damages "unless the limitation or exclusion is unconscionable."  Cal. Com. Code § 2719(3).
8  Typically, "[c]ommercial entities . . . are entitled to contract to limit the liability of one to the
9  other, or otherwise allocate the risk of doing business."  *Philippine Airlines, Inc. v. McDonnell*
10  *Douglas Corp.*, 234 Cal. Rptr. 423, 424 (Cal. Ct. App. 1987); *Peregrine Pharms., Inc. v. Clinical*
11  *Supplies Mgmt., Inc.*, 2014 WL 3791567, at *10-11 (C.D. Cal. July 31, 2014) (collecting cases
12  explaining that damages limitations between businesses are usually permissible).  That is exactly
13  the case here—the parties agreed to limit liability pursuant to ***Murj's*** "License Agreement Terms
14  & Conditions" document.

15  Any drop in Murj's market value and the cost of developing its confidential information
16  are consequential damages.  *See* Dkt. 44, ¶¶60, 63; *see also Schonfeld v. Hilliard*, 218 F.3d 164,
17  176 (2d Cir. 2000) (holding that "the market value of a lost income-producing asset" were
18  consequential damages).  Consequential damages "are secondary or derivative losses arising from
19  circumstances that are particular to the contract or to the parties."  *Schellinger Bros. v. Cotter*,
20  207 Cal. Rptr. 3d 82, 104 (Cal. Ct. App. 2016).  Lost profits, although not always considered
21  consequential damages in a breach of contract action, are likewise unavailable here because the
22  Agreement specifically precludes Murj from recovering lost profits—Murj cannot ignore this
23  language via pleading.  *See* Dkt. 44-2, Section 9.1; *see also* Dkt. 44, ¶62 (attempting to claim lost
24  profits is a direct rather than indirect loss).

25  Even were any of these damages recoverable under the contract, Murj has inadequately
26  pleaded them.  Special damages are subject to specific pleading requirements under Federal Rule
27  of Civil Procedure 9(g).  *See* Fed. R. Civ. P. 9(g) ("If an item of special damage is claimed, it
28  must be specifically stated.").  Murj would have had to plead that those damages were

"reasonably foreseeable at the time the parties entered into the contract." *Behnke v. State Farm Gen. Ins. Co.*, 127 Cal. Rptr. 3d 372, 392 (Cal. Ct. App. 2011).  But all Murj offered on this point was the conclusory assertion that "[t]he Agreement . . . is of the nature that Rhythm should have contemplated the fact that the foregoing losses would have been the probable result of breaching the Agreement . . . ." Dkt. 44, ¶64.[3]  Similarly, courts have dismissed claims for special damages as inadequately pleaded when plaintiffs do not plead any facts for why the special damages resulted from the breach.  *See Challenge Printing Co., Inc. v. Elecs. for Imaging Inc.*, 500 F. Supp. 3d 952, 965 (N.D. Cal. 2020) (dismissing claim for special damages because "[t]here [were] no facts stated in either the complaint or the Demand Letter to explain what caused the incidental damages").

Murj's claim for reasonable royalties is based solely on the misappropriation of confidential information.  *See* Dkt. 44, ¶61 (requesting "reasonable royalties associated with the use of Murj's Confidential Information, including those derived from the Rhythm Platform").  Because the information (*i.e.*, the Murj Platform) is not confidential as previously discussed, Murj's claim for a reasonable royalty also fails.

Moreover, Murj does not adequately allege that Rhythm caused any damage.  Murj's conclusory claim that Rhythm caused the harm (*see* Dkt. 44, ¶65) with no supporting factual allegations is inadequate at the pleading stage.  *See Fleming v. Nw. Trustee Servs., Inc.*, 2015 WL 3688424, at *2 (E.D. Wash. June 12, 2015) (finding allegations insufficient where plaintiffs "do not allege any specific damages and do not provide the faintest causal link that explains what wrongful acts by any of the defendants led to damages").

### C.   Because Murj Has Inadequately Alleged Breach of the Agreement, Murj's Specific Performance and Injunctive Allegations Should Be Dismissed.

The Court correctly noted that Murj's earlier and separate claims for specific performance

---

[3] This Court's prior conclusion regarding the amount in controversy also remains equally valid— Murj still has not pleaded any facts to support its contention that the amount in controversy exceeds $75,000.  *See* Dkt. 43, 8:16-18; *see also* Dkt. 44, ¶4.

16

1    and declaratory and injunctive relief were not independent claims but remedies.  *See* Dkt. 43 at 8-

2    9.  Because the Court permitted Murj to amend its complaint, the Court noted that "consideration

3    and dismissal of these other claims is premature and unnecessary at this time."  *See id.* at 9.

4         Despite this second chance, Murj still cannot demonstrate that Rhythm breached any

5    clause of the Agreement.  Thus, the time is now ripe to dismiss Murj's specific performance and

6    injunctive relief claims against Murj.  *See, e.g. Fallbrook Hosp. Corp. v. Cal. Nurses Ass'n*, 2014

7    WL 2779763, at *6 (S.D. Cal. June 19, 2014) (dismissing complaint seeking specific performance

8    and declaratory relief because the complaint failed to state a claim); *Harrell v. Elizabeth F.*

9    *Ferguson Revocable Living Tr.*, 2019 WL 6618056, at *4 (E.D. Cal. Dec. 5, 2019) (dismissing

10   cause of action for declaratory relief because a claim for declaratory relief "cannot survive a

11   motion to dismiss when the substantive claims on which it is based are dismissed"); *Hollins v.*

12   *Recontrust, N.A.*, 2011 WL 1743291, at *5–6 (C.D. Cal. May 6, 2011) (dismissing claim for

13   injunctive relief because it is not a cause of action and because failure of substantive allegations

14   meant that the plaintiff had not met standard for injunctive relief); *see also Morris v. Residential*

15   *Credit Sols., Inc.*, 2015 WL 428114, at *7, 10 (E.D. Cal. Feb. 2, 2015) (including injunctive relief

16   in dismissal of substantive cause of action for failure to plead sufficient factual assertions).

17        Because Murj has inadequately pleaded its substantive allegations, the Second Amended

18   Complaint should be dismissed in its entirety.

19                                    **CONCLUSION**

20        Murj's allegations of breach, causation, and damages are conclusory, unsupported by

21   factual allegations, and unavailable as a matter of law or the explicit language of the Agreement.

22   Accordingly, the Court should dismiss Murj's Second Amended Complaint in its entirety with

23   prejudice for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

24

25

26

27

28

1    Dated:  January 7, 2022                    Respectfully submitted,

2                                               /s/ Edward D. Johnson
                                                MAYER BROWN LLP
3                                               Edward D. Johnson (SBN 189475)
                                                Elspeth V. Hansen (SBN 292193)
4                                               Two Palo Alto Square, Suite 300
                                                3000 El Camino Real
5                                               Palo Alto, CA 94306-2112
                                                wjohnson@mayerbrown.com
6                                               ehansen@mayerbrown.com
                                                Telephone: (650) 331-2000
7                                               Facsimile:  (650) 331-2060

8                                               Michael L. Lindinger (*pro hac vice*)
                                                Marie C. Notter (*pro hac vice*)
9                                               1999 K Street, N.W.
                                                Washington, D.C. 20006-1101
10                                              mlindinger@mayerbrown.com
                                                mnotter@mayerbrown.com
11                                              Telephone:  (202) 263-3000
                                                Facsimile:  (202) 263-5323
12
                                                *Attorneys for Defendant Rhythm Management Group,*
13                                              *PLLC*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION TO DISMISS ALL CLAIMS IN PLAINTIFF'S SECOND AMENDED COMPLAINT
CASE NO. 5:21-CV-00072-EJD